NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WARREN ONLY, : | |
| : | Civil Action No. 02-CV-3176 (JLL) |
| Plaintiff, : | |
| : | |
| v. : | OPINION AND ORDER |
| : | |
| OFFICER MARK CYR, et al., : | |
| : | |
| Defendants. : | |

**LINARES**, District Judge.

### INTRODUCTION

This matter comes before the Court on the motion of Defendants New Jersey Institute of Technology ("NJIT") and Mark Cyr (hereinafter "Officer Cyr") for summary judgment pursuant to Fed. R. Civ. P. 56. Defendant James Robertson ("Robertson") moves separately for summary judgment. Plaintiff Warren Only, who is pro se, commenced suit against Defendants on various state law and constitutional claims. The Court has considered the submissions in support of and in opposition to these motions. The motions are resolved without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure.

### FACTUAL AND PROCEDURAL BACKGROUND

For purposes of the instant motion, the relevant facts are as follows. On November 6, 2001, Warren Only was utilizing the public research facilities at NJIT, in Newark, New Jersey. (Compl. ¶ 10). At this time, James Robertson, an Assistant University Librarian employed by

NJIT, received a report from a front desk library worker that a library patron had removed a stapler and was believed to have left the library without returning the stapler to the front desk as required. (Robertson Aff. ¶ 3). In response to this information, Robertson reported the front desk worker's suspicion to the NJIT security department, and officers were dispatched. (Id. ¶ 4). On or about the same time, Plaintiff, having since re-entered the library, was identified by the front desk worker as the individual suspected of stealing the stapler. (Id. ¶ 5).

Shortly thereafter, Officer Cyr and Officer Kenneth Green (hereinafter "Officer Green"), uniformed officers with the NJIT Department of Public Safety and Security, arrived at the NJIT library to investigate the report. (Id. ¶ 9). After discussing the matter with Robertson, the officers located Plaintiff in the library, and requested that he step outside for questioning. (Cyr Aff. ¶¶ 3, 4; Green Aff. ¶¶ 3, 4). Plaintiff complied with the request and exited the library. (Cyr Aff. ¶ 5; Green Aff. ¶ 4). Although he failed to produce identification, Plaintiff remained cooperative throughout questioning, complying with Officer Green's request to look in his bag. (Cyr Aff. ¶ 7; Green Aff. ¶ 7). Upon confirming that Plaintiff's bag did not contain the reportedly stolen stapler, Officer Cyr suggested that it would be better if Plaintiff used the public library in the future. (Cyr Aff. ¶ 8). Plaintiff then exited the lobby. At no point during the investigation did either officer search Plaintiff's person, detain Plaintiff against his will, or attempt to take Plaintiff into custody. (Cyr Aff. ¶ 10; Green Aff. ¶ 9). At some point later that afternoon, the missing stapler was found in the rear enclosed computer area where Plaintiff had been seated. (Robertson Aff. ¶ 17).

On July 7, 2002, Plaintiff initiated the within suit against Officer Cyr, Officer John Doe,[1] NJIT, and Defendant Robertson. Plaintiff charges that he was racially profiled, unlawfully stopped and illegally searched by Officer Cyr. Plaintiff alleges civil rights violations on the part of all Defendants. Plaintiff's section 1983 claims are premised on alleged violations of his First Amendment right to peacefully assemble, Fourth Amendment right to be free from unreasonable searches and seizures, and Fourteenth Amendment right to equal protection and right to privacy. Plaintiff further alleges that Defendants were part of a conspiracy to interfere with his civil rights in violation of 42 U.S.C. §§ 1985(3) and 1986. Plaintiff also asserts a claim pursuant to 42 U.S.C. § 1981 against Defendant Robertson. Additionally, Plaintiff asserts various state law claims against Defendant Cyr including, a civil bias claim under N.J.S.A. 2A:53A-21, and official misconduct in violation of N.J.S.A. 2C:30-2.

Defendants Cyr and NJIT filed cross-claims against Defendant Robertson for both common law indemnification and contribution pursuant to the Joint Tortfeasor's Contribution Act, N.J.S.A. 2A:53A-1, et seq., and the Comparative Negligence Act, N.J.S.A. 2A:15-5.1, et seq.[2] Defendants Cyr and NJIT presently move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendant Robertson moves separately for summary judgment, seeking dismissal of all claims and cross-claims.

---

[1] In his Complaint, Plaintiff also includes "Officer John Doe" as a Defendant. (Compl. ¶ 2A). This Defendant is identified as an NJIT "campus police officer." (Id.). Presumably, Plaintiff is referring to Officer Green, as he was the officer accompanying Officer Cyr during the investigation. (Green Aff. ¶ 3).

[2] Defendant Robertson also filed cross-claims against Officer Cyr and NJIT for both common law indemnification and contribution.

**LEGAL STANDARD**

A.   **Summary Judgment**

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 138 (3d Cir. 2001). "A 'genuine' issue is one where a reasonable jury, based on the evidence presented, could hold in the movant's favor with regard to that issue." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). When considering a motion for summary judgment, all evidence must be reviewed and all inferences drawn therefrom must be in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Once the moving party files a properly supported motion, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute of material fact. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 256. "The mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." Id. at 252. Furthermore, conclusory statements and arguments do not raise triable issues which preclude summary judgment. Ridgewood Board of Educ. v. N.E., 172 F.3d 238, 252 (3d Cir. 1999). Instead, the nonmoving party must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257 (citation omitted). If the opponent fails to make a sufficient showing regarding an essential element of his or her case upon which he or she will bear the burden of proof at trial, all other facts are necessarily immaterial and summary judgment must be granted.

Celotex Corp. v. Catrett, 477 U.S. 317, 321 (1986).

The present task is to determine whether genuine issues of material fact exist and whether Defendants are entitled to judgment as a matter of law.

## LEGAL DISCUSSION

A.   **Plaintiff's Section 1983 Claims Against Defendants**

In the Fifth Count of the Complaint, Plaintiff makes several federal claims under 42 U.S.C. § 1983 for violations of his First Amendment right to peacefully assemble, Fourth Amendment right to be free from unreasonable searches and seizures, and Fourteenth Amendment right to privacy and right to equal protection. There are certain requirements for establishing a constitutional claim under 42 U.S.C. § 1983. Section 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 does not create substantive rights; but rather "it provides remedies for deprivations of rights established elsewhere in the Constitution or federal laws." Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). A section 1983 claim has two essential elements: 1) that the conduct complained of was committed by a person acting under the color of state law; and 2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-

56 (3d Cir. 1994). Given that the parties do not dispute the first factor, the Court will focus entirely on whether Defendants' actions deprived Plaintiff of a right that is actionable under section 1983.

### 1. Section 1983 claims against Officer Cyr

Officer Cyr seeks dismissal of the section 1983 claims against him on a theory that he is entitled to qualified immunity. Qualified immunity shields state officials performing discretionary functions from suit for damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "[I]n § 1983 cases involving alleged violations of the Fourth Amendment, ... the inquiry is whether a reasonable officer could have believed that his or her conduct was lawful, in light of the clearly established law and the information in the officer's possession." Sharrar v. Felsing, 128 F.3d 810, 827 (3d Cir. 1997) (citing Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)). In evaluating qualified immunity claims, a court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Conn v. Gabbert, 526 U.S. 286, 290 (1999); Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000). If the Court determines that no constitutional right would have been violated if the plaintiff's allegations were established, there is no need for any further inquiries concerning qualified immunity. Saucier v. Katz, 533 U.S. 194, 201 (2001). The grant of summary judgment is appropriate if no reasonable juror could conclude that the plaintiff's "clearly established rights were violated." Wilson, 212 F.3d at 786 (citing Orsatti v. New Jersey State Police, 71 F.3d 480,

482 (3d Cir. 1995)).  If a clearly established right has been violated, it must then be considered whether in light of the circumstances known to the officer at the time, a reasonable officer would have known that his conduct violated the right; if a reasonable officer would have so known, then an officer is not entitled to immunity for such actions.  Harlow, 457 U.S. at 813-20; Bartholomew v. Pennsylvania, 221 F.3d 425, 428 (3d Cir. 2000).  Qualified immunity affords "protection to all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  In determining whether a government official is entitled to immunity, both the existence of a clearly established right and the objective reasonableness of the officer's actions are questions of law for the Court to decide.  Curley v. Klem, 298 F.3d 271, 278 (3d Cir. 2002).

>     Plaintiff alleges a violation of his Fourth Amendment right to be free from unreasonable searches and seizures.  The Fourth Amendment to the United States Constitution provides, in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause."  U.S. Const. amend IV.  "[T]he most basic constitutional rule in this area is that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment--subject only to a few specifically established and well-delineated exceptions.'"  Coolidge v. New Hampshire, 403 U.S. 443, 454-55, reh'g denied, 404 U.S. 874 (1971) (citing Katz v. United States, 389 U.S. 347, 357 (1967)).  The fundamental requirement of the Fourth Amendment is that searches and seizures be reasonable.  New Jersey v. T.L.O., 469 U.S. 325, 340 (1985).

>     It is well established under the Fourth Amendment that a search conducted without a

warrant issued upon probable cause is per se unreasonable, unless it comes within a few recognized exceptions. Minnesota v. Dickerson, 508 U.S. 366, 372 (1993). It is equally well settled that one such exception is a search that is conducted pursuant to valid consent. Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973); see also Kerns v. Chalfont-New Britain Tp. Joint Sewage Auth., 263 F.3d 61, 65 (3d Cir. 2001). However, "[w]hen a State attempts to justify a search on the basis of consent, the State must demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied." Coleman v. New Jersey Div. of Youth and Family Servs., 246 F. Supp. 2d 384, 391 (2003) (citing Bustamonte, 412 U.S. at 248). "'Voluntariness is a question of fact to be determined from all the circumstances.'" Id. (quoting Bustanmonte, 412 U.S. at 248-49); see also U.S. v. Martinez, 168 F.3d 1043, 1046 (8th Cir. 1999) (holding that voluntariness must be determined by looking at the totality of the circumstances including the nature of the interchange, the characteristics of the individual stopped, and the coerciveness of the environment).

  Turning to the facts at bar, Plaintiff admits that he consented to the search, acknowledging that "any reasonable person of sound intelligence would comply upon being accused of such allegations ...." (Am. Br. ¶ 37). At no point in either the Complaint or Amended Brief does Plaintiff allege that anything other than his briefcase was searched. Moreover, as the affidavits indicate, Plaintiff's consent was in direct response to Officer Green's question, "Do you mind if I look in the bag [?]" (Cyr Aff. ¶ 7; Green Aff. ¶ 7). Other courts have held consent under similar circumstances to be voluntary and valid. See, e.g., United States v. Pena, 143 F.3d 1363, 1366-67 (10th Cir. 1998) (finding that the District Court did not err in determining that consent was freely and voluntarily given when Pena responded "go ahead" to officer's question,

"you wouldn't mind if I looked then, if I had a look in the room"). Furthermore, it is clear from Plaintiff's pleadings that he possesses a firm command of the English language, and therefore was capable of understanding and consenting to Officer Green's request. Plaintiff's admitted consent and ability to speak and understand English, when viewed in conjunction with both the brevity of the search[3] and the absence of any evidence of duress or coercion, leads this Court to find that Plaintiff voluntarily consented to the search of his briefcase. Moreover, applying the standard of objective reasonableness in measuring the consent, Florida v. Jimeno, 500 U.S. 248, 251 (1991), this Court finds that the scope of the search did not exceed the terms of the consent, nor was it revoked at any time. Here, Officer Green looked in Plaintiff's bag and confirmed that it did not contain the reportedly stolen stapler. Neither Officer Cyr nor Officer Green searched Plaintiff's person, detained him or attempted to take him into custody. Plaintiff then proceeded to walk towards the library lobby. Accordingly, this Court finds that there are no triable issues of fact that Plaintiff was subjected to an unreasonable search in violation of the Fourth Amendment.[4]

---

[3] The entire investigation took approximately less than seven minutes. (Cyr Aff. ¶ 9).

[4] Additionally, this Court finds that Plaintiff's Fourth Amendment claim also fails inasmuch as it may be based on a claim of unconstitutional seizure grounded in an alleged false arrest. Fourth Amendment seizure occurs "when there is a governmental termination of freedom of movement through means intentionally applied," Brower v. County of Inyo, 489 U.S. 593, 597 (1989), such that "a reasonable person would have believed that he was not free to leave." United States v. Mendenhall, 446 U.S. 544, 554 (1980). In the context of the Fourth Amendment, "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." Id. at 553. No seizure has occurred, however, if "a reasonable person would feel free to disregard the police and go about his business, or ultimately [if] a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter." United States v. Kim, 27 F.3d 947, 951 (3d Cir. 1994) (internal citations omitted). Here, Plaintiff was not arrested by Officers Cyr or Green; nor was he detained against his will. Plaintiff's freedom of movement was never restrained, and as such, he was not 'seized'

Hence, the Court is satisfied that no reasonable jury could find that Officer Cyr's actions violated Plaintiff's Fourth Amendment rights. Therefore, it is not necessary to reach the second prong of the qualified immunity analysis. Accordingly, Officer Cyr's motion for summary judgment as to the section 1983 claims will be granted.[5]

### 2. Section 1983 claims against NJIT

Defendants also argue that as NJIT is a public entity, it cannot be held liable for a violation of section 1983 under the theory of respondeat superior solely because it employs a tortfeasor. Harel v. Rutgers, State Univ., 5 F. Supp. 2d 246, 267 (D.N.J. 1998) ("Under § 1983, a government entity, such as Rutgers [University], cannot be held liable for the actions of its employees on a theory of respondeat superior.") (citing Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691 (1978)). A public entity can only be held liable for claims brought under § 1983 when the action is done pursuant to an official policy or custom. Fagan v. City of Vineland, 22 F.3d 1283, 1291 (3d Cir. 1994) (citing Monell, 436 U.S. at 694). "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). Customs are "'practices of state officials ... so permanent and well settled' as to virtually constitute law." Id. (quoting Monell, 436 U.S. at 691) (other internal quotation marks omitted).

---

within the meaning of the Fourth Amendment.

[5]Plaintiff also alleges that his First and Fourteenth Amendment rights were violated. These claims arise by virtue of the fact that Plaintiff was subjected to an investigation and search. Because this Court finds that the search was not unlawful, it is not necessary to address Plaintiff's remaining constitutional claims.

Defendants argue that, because Plaintiff has not demonstrated the existence of such an official policy, it is entitled to immunity. This Court agrees.

Turning to the facts at bar, this Court finds that Plaintiff has not met his burden of identifying a specific policy to deprive Plaintiff of his constitutional rights; nor has Plaintiff pointed to any authorization, approval or acquiescence of unconstitutional conduct. Indeed, Plaintiff has proffered nothing more than bare allegations that NJIT took any action in connection with the incident or explicitly or implicitly approved any of the conduct alleged in this matter. This is not enough. Accordingly, the Court grants summary judgment against Plaintiff on his claims against NJIT.

### 3. Section 1983 claims against Defendant Robertson

In the Complaint, Plaintiff further alleges that Robertson negligently failed to prevent the allegedly wrongful actions of the other Defendants and negligently failed to provide assistance to Plaintiff during the aforementioned investigation. (Compl. ¶ 31). The Supreme Court, however, has found that mere negligent conduct on the part of a defendant can not constitute an actionable claim under section 1983. Daniels v. Williams, 474 U.S. 327, 328-32 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986). As such, a plaintiff must "point to admissible evidence that demonstrates the existence of genuine issues as to more than negligent behavior on the part of each defendant, if he is to defeat the motion for summary judgment." Rogers v. Univ. of Pennsylvania, 1987 WL 17959, *2 (E.D. Pa. Oct. 1, 1987); see also Springfield v. Kibbe, 480 U.S. 257, 270 (1987) (deliberate indifference or reckless disregard required for Section 1983 liability). Here, the extent of Robertson's involvement included reporting a suspected incident of theft relayed to him by the front desk worker, and identifying the suspect to the NJIT officers

upon arrival. Plaintiff has failed to present evidence indicating gross negligence or recklessness, or even mere negligence, to be sure, on the part of Defendant Robertson. As such, the Court grants Defendant Robertson summary judgment as to these claims.

**C.     Remaining Federal Claims**

    **2.     Sections 1985 claim against Defendant Cyr**

In the Sixth Count of the Complaint, Plaintiff asserts that Defendant's acts were committed pursuant to a racially motivated conspiracy to prevent Plaintiff from using the public library facility, thus depriving him of his rights and privileges under law in violation of 42 U.S.C §§ 1985(3). In order to state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege:

> (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

Lake v. Arnold, 112 F.3d 682, 685 (3d Cir. 1997) (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971)). The conspiracy element of section 1985(3) requires "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon,' and 'an overt act that results in that damage.'" Lenard v. Argento, 699 F.2d 874, 882 (7th Cir. 1983) (quoting Rotermund v. United States Steel Corp., 474 F.2d 1139, 1145 (8th Cir. 1973)).

Here, Plaintiff has merely alleged a conspiracy without providing any facts to support his section 1985(3) claim. Plaintiff has failed to allege that there was ever an agreement between

Defendant Robertson and the NJIT Officers to deprive him of his civil rights. The existence of an agreement is a necessary component of a conspiracy. Graves v. U.S., 961 F. Supp. 314, 320 (D.D.C.1997) (citing Breckenridge, 403 U.S. at 102). The Court finds that there is no genuine issue of material fact as to whether a conspiracy existed. As such, summary judgement is granted as to this claim.

### 2.     Plaintiff's section 1986 claims

Section 1986 is a derivative of section 1985 and, by definition, depends on a violation of section 1985. Therefore, if the "claimant does not set forth a cause of action under the latter, its claim under the former necessarily must fail also." Rogin v. Bensalem Twp., 616 F.2d 680, 696 (3d Cir. 1980). Hence, Plaintiff Only's section 1986 claim must fail and summary judgment will be granted as to this claim as well.

### 3.     Plaintiff's section 1981 claim against Defendant Robertson

In the Seventh Count of his Complaint, Plaintiff asserts a violation of 42 U.S.C. 1981 by Defendant Robertson. Essentially, section 1981 prohibits racial discrimination in the making and enforcement of contracts and property transactions. Brown v. Phillip Morris, Inc., 250 F.3d 789, 796 (3d Cir. 2001). To state a claim under § 1981 "a plaintiff must allege facts in support of the following elements: (1) that plaintiff is a member of a racial minority; (2) intent to discriminate on the basis of race by defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute." Perry v. Gold & Laine, P.C., 371 F. Supp. 2d 622, 628 (D.N.J. 2005) (quoting Brown, 250 F.3d at 797 (internal quotations omitted)). A showing of disparate impact will not be sufficient, given that section 1981 only provides a cause of action for intentional discrimination. Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 562 (3d Cir. 2002)

(citing Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania, 458 U.S. 375, 390-91 (1982)).  In this matter, even after liberally construing Plaintiff's pro se pleadings and reviewing the evidence contained in the record, Plaintiff fails to state a cause of action under section 1981.  This Court cannot find anything in the record that suggests that Defendant Robertson engaged in or intended to engage in any racially motivated discrimination against Plaintiff.  Therefore, summary judgment shall be granted as to this claim.[6]

**D.     State Law Claims**

Having dismissed all the federal claims over which the Court has original jurisdiction under 28 U.S.C. § 1331, the Court must now determine whether it will retain jurisdiction over the remaining state law claims. Plaintiff's state law claims are before this Court under supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), which provide that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction...." Because the Court has granted summary judgment in favor of Defendants on all federal claims, it declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966); DeAsencio v. Tyson Foods, Inc., 342 F.3d 301, 308 (3d Cir. 2003); Broderick v. Associated Hosp. Serv., 536 F.2d 1, 8 n. 25 (3d Cir. 1976); Caputo v. Fauver, 800 F. Supp. 168, 173 (D.N.J. 1992), aff'd, 995 F.2d 216 (3d Cir. 1993).

---

[6]It appears to this Court that no additional facts have been asserted against Defendant Officer John Doe.  As such, the Court's rulings as to the other Defendants apply with equal force to Defendant Officer John Doe.  Accordingly, all the federal claims are also dismissed as against this Defendant.

## CONCLUSION

For the foregoing reasons, it is on this 12th day of December, 2005,

**ORDERED** that the motion for summary judgment by Defendants Mark Cyr and NJIT [Docket #26] is hereby GRANTED; and it is further

**ORDERED** that Defendant James Robertson's motion for summary judgment [Docket #32] is also GRANTED; and it is further

**ORDERED** that all claims against Defendant Officer John Doe are hereby DISMISSED; and it is further

**ORDERED** that this Court declines to exercise supplemental jurisdiction over the remaining state law claims; and it is further

**ORDERED** that Plaintiff is granted leave of forty five (45) days within which to file the remaining state law claims in state court.

This case is closed.

/s/ Jose L. Linares
DATED: December 12, 2005                UNITED STATES DISTRICT JUDGE